# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

CHARLES SCOTT, : CIVIL ACTION

    Plaintiff, :

v. :

JAMES MERCIER, :

    Defendant. : NO. CV506-33

## ORDER

Plaintiff, Charles Scott, filed suit against Defendant, Brantley County Deputy Sheriff James Mercier, in his official capacity, alleging excessive use of force in violation of the Fourth Amendment, and related state law claims.

Presently before the Court is Mercier's motion for summary judgment, as amended. Because Scott's Fourth Amendment claim is barred by the doctrine of sovereign immunity, Mercier's motion will be **GRANTED** as to the federal claim. Scott's state law claims will be **DISMISSED** without prejudice.

## BACKGROUND

Viewed in the light most favorable to Scott, the facts are as follows. On September 12, 2005, Charles and Marlene

Scott were baby-sitting the three minor children of Karen and Shannon Gibson. According to Plaintiff, Karen Gibson had primary custody of the children, and the Scotts were watching the children at Karen Gibson's request, or with her consent. Earlier that day, Karen Gibson was arrested and asked her friend, Angela, to watch the children. Charles and Marlene Scott are Angela's parents.

Angela left the children at the Scotts' residence to try to get Karen Gibson out of jail. Later that day, Deputy Mercier drove to the Scotts' residence in his patrol car, with Shannon Gibson following behind in his private car, to retrieve the children and place them in Shannon Gibson's custody. Deputy Mercier came to the Scotts' chain link fence and informed Charles Scott that he had come to get Mr. Gibson's children.

Plaintiff explained to Defendant that he did not feel comfortable releasing the children from his charge without a warrant or some other official document regarding the children and their custody. Scott informed Mercier that he would not permit the Deputy to enter his house without any written paperwork regarding the children or other governmental authorization to do so.

2

At that point, Scott contends that Mercier shoved the gate into him, which knocked Plaintiff back and cut his arm. Scott asked Mercier to call the Sheriff to the scene, but Mercier refused, stating that he "was the law." Scott also alleges that Mercier told Scott that he was going into Scott's home "one way or another" to get the children. Thereafter, without invitation, a warrant, or other court order, Mercier came onto the Scotts' property and again informed them that he intended to enter their home to retrieve the Gibson children.

Both men walked to the porch, and Scott told Mercier that he planned to call the Sheriff himself. Scott avers that when he turned to open the door, Mercier blind-sided him and shoved his face into the wall of his home. Although Scott was not under arrest, and had not been accused of committing any crime, Mercier attempted to spray Scott with mace. Defendant did not warn Plaintiff to stay out of his home, or that he was going to be restrained in any way, until after Plaintiff was injured and threatened with mace. As a result of Mercier's attack, Scott suffered a broken nose, bruises, and lacerations on his face and arm.

AO 72A
(Rev. 8/82)

After this confrontation, Marlene Scott told Mercier that if he would calm down, she would go into the house and bring the children out. After Mrs. Scott retrieved the children, they got into their father's car and left.

On May 5, 2006, Scott filed this action against Mercier, and ten months later, Scott amended his complaint. According to the amended complaint, Scott asserts a Fourth Amendment claim, pursuant to 42 U.S.C. § 1983, and state law tort claims for assault, battery, false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress.[1]

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment

---

[1] According to a stipulation of the parties, Scott has sued Mercier in his official capacity only. Dkt. No. 48., Ex. A at ¶ 23. See Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985). Because Scott does not seek to recover against Mercier in his personal capacity, the doctrine of qualified immunity does not apply to Scott's federal claim. Id. at 165-167.

4

as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor. . . ", United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991)(en banc)(internal quotation marks omitted).

**DISCUSSION**

Title 42, United States Code, Section 1983, allows individuals to sue state actors in federal court for constitutional violations. Monroe v. Pape, 365 U.S. 167, 175-84 (1961). In pertinent part, the Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV.

5

AO 72A
(Rev. 8/82)

The Eleventh Amendment provides immunity to the several states against federal claims brought in federal court: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI.

Notwithstanding the express language of the Amendment, the doctrine of sovereign immunity has been interpreted to protect a state from suit by its own citizens as well. Hans v. Louisiana, 134 U.S. 1, 13 (1890). As a remnant of pre-ratification sovereignty, sovereign immunity extends only to states and entities that act as "arms" of the states. Alden v. Maine, 527 U.S. 706, 713 (1999). Municipal corporations, such as counties, are not protected by the Eleventh Amendment. Howlett v. Rose, 496 U.S. 356, 376 (1990). A suit naming a government official in his official capacity is actually a suit against the governing entity itself. Graham, 473 U.S. at 165-66.

Mercier argues that he is entitled to Eleventh Amendment immunity on Scott's unlawful seizure and excessive use of force claim. "Whether a defendant is an 'arm of the state'

6

AO 72A
(Rev. 8/82)

must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Manders v. Lee, 338 F.3d 1304, 1309 (11th Cir. 2003). In making this determination, the Court considers four factors: (1) how the entity is defined by state law, (2) the State's degree of control over the entity, (3) the source of the entity's funding, and (4) who is responsible for judgments against the entity. Id.

The Georgia constitution designates the sheriff as a "county officer." Ga. Const. art. IX, § 1, ¶ 3(a)-(b). Nonetheless, under Georgia law, the sheriff is not a subunit of the county in which it operates. Rather, the sheriff's office is separate and independent from the county commission, and is subject to the control of the state legislature.

Further, counties exercise no control over the use of force policies of the sheriff's office. Id. at 1310. Instead, the sheriff wears a "state hat" when creating and implementing his use of force policy. The first factor, the way Georgia law defines the Sheriff's office, weighs in favor of Eleventh Amendment immunity. Id. at 1319. The

7

second factor also militates in favor of immunity because the State controls the Sheriff's "duties, training, and discipline[.]" Id. at 1322.

The third factor requires the Court to consider the source of funding for Sheriff's office. Pursuant to Georgia law, the County bears most of the burden of funding the Sheriff's operations. However, the County's financial control over the Sheriff is attenuated by virtue of the fact that the County must provide enough money to allow the Sheriff to discharge his legal duties, and the County Commission cannot dictate how these funds are spent. Id. at 1323. Thus, the third factor is not determinative; consideration of the Sheriff's funding cuts both ways.

Turning to the fourth factor, the County would not be directly responsible for any judgment against Mercier. Id. at 1326. However, the Sheriff would have to pay any adverse judgment out of his budget, which would implicate County funds indirectly. Id. at 1327. Even where the state treasury is not affected by an adverse judgment, this factor is not outcome-determinative in the Eleventh Amendment analysis. That is, immunity may still apply even where the

8

fourth factor does not weigh strongly in the balance. Id. at 1327-28.

Considering all these factors, the Eleventh Circuit has found that the Sheriff is an "arm of the state" when the design and application of the Sheriff's use of force policy at the County jail is at issue. Id. at 1308-28. While Manders concerned the Sheriff's use of force policy at the jail, there is no significant distinguishing factor present in this case that would permit the Court to avoid the result of Manders.

Deputy Mercier was attempting to resolve a civil dispute involving the custody of minor children, a matter governed by state law. Ga. Code Ann. §§ 19-9-1 - 19-9-104. Scott has not alleged that any County ordinance was implicated, that the Brantley County Board of Commissioners had any control over Deputy Mercier's use of force, or that Mercier's actions were done at the behest of any County official. See Mladek v. Day, 293 F. Supp. 2d 1297, 1304 (M.D. Ga. 2003). Contrary to Scott's suggestion, because Mercier acted as a state official at all relevant times, Brantley County has no liability for any Fourth Amendment violation committed by Mercier.

9

Moreover, local officials, like deputy sheriffs, may be sued under § 1983 in their official capacities only where the alleged unconstitutional action is taken pursuant to official policy or governmental custom. A local government may not be held responsible under § 1983 on a respondeat superior basis. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-94 (1978). Thus, Scott's claim also fails because he does not aver that Mercier's excessive use of force was done pursuant to the official policy or practice of the Brantley County Sheriff's office. See Kicklighter v. Herrin, No. CV206-77, 2007 WL 2248089, at *8-9 (S.D. Ga. July 31, 2007).

Scott's Fourth Amendment claim against Mercier is foreclosed by Manders and Monell.

## CONCLUSION

For the reasons explained above, Mercier's motion for summary judgment is **GRANTED** as to the Fourth Amendment claim. Dkt. Nos. 17 & 41. The Court declines to exercise supplemental jurisdiction over Plaintiff's pending state law claims. 28 U.S.C.A. § 1367(c)(3) (1993). Consequently, Scott's claims for assault, battery, false imprisonment,

10

intentional infliction of emotional distress, and negligent infliction of emotional distress are **DISMISSED** without prejudice. The Clerk is directed to enter judgment accordingly.

**SO ORDERED**, this \_\_\_14\_\_\_ day of September, 2007.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)